Good morning. May it please the Court, I'm Tom Diller on behalf of defendant and appellant Clark County, Nevada. Your Honors, we're apportioning time between the appellants and I'd like to reserve two minutes in rebuttal if I might. This case comes to this Court on appeal from an order from the U.S. District Court of Nevada directing a body of elected officials to give a public works contract to a specific contractor. And the order comes based on conclusions of law that are contrary to federal law, contrary to Nevada statute, Nevada law, and based on findings of fact that are really far-reaching without an opportunity for defendants to put on a case. Effectively it was a decision made on the papers with far-reaching factual findings without due process to present contrary evidence, to put on witnesses, to object to exhibits, to do much of anything at all. Both the conclusions of law and the findings of fact are worthy of reversal. The particular bidded issue involved an improvement of a freeway system at Clark County. The plaintiff did not receive that bid and filed an action alleging various federal claims. It was removed of federal court and motions to dismiss were filed for failure to state federal claims for relief. We're familiar with the background so you don't need to spend time on that. Thank you, Your Honor. Effectively the court found that the disappointed bidder had due process protections, that they had an entitlement to receive that contract based upon what had happened previously, even though the governmental body at issue was plainly afforded discretion under the statutes to reject any bids based on a finding of it was not supported by the public interest. Nevada case law at the time instructed the courts to give considerable deference to the elected officials. That is a presumption that their decision was made in the public interest and that that decision can only be overcome on really a mandamus standard review, that is arbitrary and capricious. In this case the court applied the wrong standard by finding a due process attachment which is contrary to clearly established Supreme Court case law, Ninth Circuit case law, that if a governmental body has any discretion at all in deciding to not award an entitlement or a contract, there is no due process. That means there's no due process safeguards and any notions of, I suppose, fundamental fairness that a district court thinks were compromised is not relevant. Let me interrupt you. Why didn't the county waive its argument that it couldn't pull out of the project? In other words, given what they did, what they said, they had to go through and award the contract to somebody. Well, Your Honor, when it initially came up the first time in front of the Board of County Commissioners, there was determination made to go forward with the contract as bid. In the course of the litigation and the fight, it was seven months later that it came back for their decision again. At that time they were presented with information from staff that effectively economic forecasts have drastically changed. They no longer have money to do this beltway expansion piecework one by one. They've got enough money for one project period, and after that all subsequent projects are or cannot be funded, at least in the immediate future. The circumstances dramatically changed from when they were first presented until subsequently made the decision, based on advice of counsel, excuse me, advice of staff, that it was no longer in the public interest. Was these changed circumstances after the district court issued the writ or before? Well, the ultimate writ that it granted was certainly after. In fact, the court was reacting to the rejection that the court imposed the writ. There was some proceedings. And it was after the first writ, the first order from the court? It was after the stipulated, at least unopposed, order from the court that it will go back and that the bidder would have all the information considered beforehand to prepare for that next bid. So rather than do that, there were meetings held, and ultimately the conclusion was reached that all of the bids should be rejected. There was public meetings in which this information was presented to them by the comptroller, by the director of public works. Thank you, Your Honor. And they relied upon that. And then at that subsequent hearing or board hearing determined that it was not in the public interest because of the changed circumstances and wanting the director of public works to refashion the single contract they had left to support financially with an expanded area of the 215 expansion. Do you think that was compliance with the court's order? I do, Your Honor. The only imposition the court order gave was that all information would be that would be in the record, would be made available to all bidders, and that two of the individual commissioners would not vote on this particular But the order of the court clearly contemplated a new bid process as opposed to rejection of all the bids. So was that compliance with the court order to reject all bids when the court order clearly contemplated a new bid process? Your Honor, yes. The Nevada law gave them that right. There was nothing in the order that in any way impaired that right. The bid instructions indicated to all bidders that the county reserved the right to reject any and all bids. But you were beyond that point. Once you went to court and you resolved the case in the court by way of a stipulated order, then you had moved past the bidding process and gone into a stipulated resolution of the case. And the court entered an order. And is the county of the view that you can just disregard court orders and proceed in a different way? Your Honor, I'm beyond my time. Do you mind if I respond to that? Would you please? Thank you. Your Honor, we certainly have the opinion that there was no violation of the court order. There was no language in the order that anywhere expressed a notion that the right to reject based on public interest or any other enumerated reason Nevada statute was no longer retained by the governmental body. The district court did not share your view. I think the district court's order was that basically the district court determined that the asserted basis for rejection was pretextual. The court didn't buy it. All right. But the court did so, made these findings a fact without a record at all. There was briefs presented, and that was the extent of it. Why didn't you give the district court the heads-up that circumstances have changed instead of surprising it? I'm not sure at what point, Your Honor, that we surprised it. Well, the other side goes in the court, and then the district court awards a $120 million project to a bidder that the county said was irresponsible. That's pretty significant. You can go in to amend the order, to have a hearing. There are a lot of ways to notify the court that, you know, we know that we agree to this, but circumstances have changed. We want you to modify your order. Well, Your Honor, ultimately, keep in mind, for a practicality, this is a body of elected officials. It doesn't speak in one voice. And so what they do at the end of the day, they're not going to go forward with the contract with one voice. But before that determination is made, before the public vote is made, the county has no notion of what they're going to do. Well, you know, in my prior life, I was intimately familiar with this process. And the county does consult with its attorneys regarding, you know, there is a court the county officials are well aware that there's a court order that's out there. It's not a secret to them. And they have very experienced counsel who will tell them all the different permutations of what can happen if you do this, what happens if you do that. So the county was aware that the order was there and what their options were. I feel confident. Well, and the only order was to give equal consideration to the bidders before it. That implied consideration, not no consideration. I mean, I can understand why the district court thought the county violated the order. It's perfectly plain to me why the district court thought you violated the order. Well, Your Honor, I think it's ordered a hearing and you didn't have a hearing. You just said, no, we're going to take, you know, to use the we'll take our ball in bat and we're not going to play. You know, we're going to stop the game. Well, I think my counsel for Las Vegas Paving addressed that issue specifically in terms of remedy if the court believed that there was an order. But it certainly did so by making far-reaching factual determination on subjective intents without any opportunity to create a record. Would you think it would be fair if the court had entered an order to show cause and have a hearing regarding whether or not the county had violated this order, and if so, what the appropriate remedy would be? I would certainly find that preferential than what happened, what did happen. I don't think there's any basis to find a violation of the order. But be that as it may, the court has certain remedies available for a violation of an order. But what it is not is to direct a governmental body to take the act that it did. But would that be a fair resolution of this case in your view? Well to remand it for the court to conduct an order to show cause hearing? I would submit, Your Honor, that it gets back to the fundamental question at the outset, was there a due process interest here? And if not, the orders that preceded the court's ultimate one are ‑‑ But you agree to the order. The county agreed to have the matter go back to the board of county commissioners. And at that point, there was no argument regarding whether or not there was a due process, because the contemplation was that the bid process would go forward and all bidders would have the opportunity to present their evidence to the county commission. The argument certainly had come up, and the order was carefully crafted to avoid any implication of due process whatsoever. I understand. Okay. Thank you, counsel. How much time are you supposed to have? Your Honor, I was going to take seven minutes with two rebuttal, but I'll cut it down to five minutes total, if that's fine with the court here. Would you put five minutes on the clock? Thank you, Your Honor. May it please the Court, Wade Dockner on behalf of Las Vegas Paving. I kind of want to address some of the end issues that you were questioning Mr. Dillard about, and that's specifically regarding what happens in terms of a remedial procedure on this. Assuming that you get to the point where you felt that the court ‑‑ and I've heard Your Honor say that you could understand why the court felt that the order had been violated. The issue is the remedy in this case. And what happened was, without any real opportunity to present the additional evidence that Mr. Dillard was talking about, the court simply jumped to from a draft award that would have sent it back to the county commission for reconsideration under the appropriate standards as it set forth in the writ with clear direction, which, you know, there's an argument in my mind as to whether the writ was, in fact, clear or not, but with clear direction on how to proceed. But he didn't do that. After a brief argument, without opportunity to provide additional evidence, he simply gave the contract to Fisher Sand and Gravel. Well, in making that finding in his written order, he suddenly determines that this issue is futile, without any authority, without any issue. So you would not have objected if the district court had ordered that the matter go back before the county commission and just have a do‑over? You would not have objected to that? I don't want to say that. We would have followed the procedure, Your Honor, but I think that we have always maintained that there was no due process right underlying this entire procedure. I don't think we waived that through the writ. That wouldn't be a due process right. Nobody would have an advantage. You go back to the county commission. Everybody would present the bids. The county would decide if the county was still of the view that Fisher was not a responsible bidder, the evidence would be presented to the board, the board would make its decision, and then you go from there. And I think that's what we were willing to live with, Your Honor. The fact was that there is no authority for the courts are finding a futility in this matter. And, again, I think we've said it forth in the briefs, is that the court steadfastly refused to find bias on the part of the county commission. And, in fact, this is more important when only five of the seven commissioners ultimately voted to reject the bid, but it's still ‑‑ there's two that have been removed, and yet he still says there's no bias. So why can't you send it back to the county? You have not found that the county is incapable of making a fair and unbiased decision. You can't simply say ‑‑ Do you think the county's pulled the plug on the project, that that was proper? In other words, the county, as I understand it, they're not going forward with it. Do you think ‑‑ Well, I think what the county had suggested to do, and, again, this goes to the rightness argument that I think we made in our brief, Your Honor, was that the county was going to not necessarily re‑bid the same project. They were going to lump this project with another project they wanted to do and kind of combine the two into a hybrid and re‑bid that project. Do you think they can do that, given what had happened? Your Honor, I do think Nevada law provides that they are allowed to re‑do that. However, I think that there is also an equal argument that it should have traveled back to the county commission. But I think that they are ultimately entitled to do that. But I don't want to lose sight of the underlying issue here. Starting from the TRO, this Court found that there was a due process right. There never would have been a TRO. There never would have been a preliminary injunction. Right. But nobody appealed that. That's the ‑‑ And we have appealed that here, Your Honor. No, no, no. I mean, I know you have now. But, I mean, nobody took a ‑‑ took the district court up on that. Well, and, Your Honor, we're not required to until there's a final order, which was not issued until the Court awarded the project to the district. I mean, maybe you're not required to, but perhaps if you had alerted the court to the issue and made an effort to convince the court that it was reading the statutes wrong. Your Honor, and we had done that at the preliminary ‑‑ or, excuse me, the temporary restraining order stage and made that same argument before the Court took us back in chambers, made some comments, and we came out and we resolved this issue, if you will call it a resolution, not by talking about due process, but by simply talking about this is the procedure you use, not waiving the rights to assert due process at this appeal. Okay. Okay. Thank you, counsel. Members of this Court, my name is Stanley Parry, and I'm with the law firm of Ballard Spahr, and I represent the FLE Fisher Sand and Gravel. If I just might have a personal moment, I'm grateful to be here. I look around this building and realize I'm at the end of my career somewhat, and it's a pleasure to be in the Ninth Circuit, and I appreciate the opportunity to make this argument. I'd like to discuss a couple of undisputed principles of law that apply to this case. First of all, under Nevada statutes, particularly NRS 338.143, there is a bidder that is the lowest responsible bidder shall be awarded a public contract. Second principle of law, when there is an abuse of discretion, the courts in the state of Nevada are allowed by the way of a writ of mandamus to intervene and correct an abuse of discretion. That can include dictating that the award be, that the matter be awarded to a particular bidder. That is not outside the power of the court. In fact, it is well- Is there any case that has ever done that? In essence, it's directing the county commissioners to vote in a particular way, and that's a severe interference with the legislative process. I agree, Your Honor. And I recognize what that goes to is judicial restraint. Does the court just jump into the middle of a public contract matter and then force the governmental body to do what the court wants it to do? And award a $120 million contract. That's correct, Your Honor. But keep in mind, in this case, the county commission was willing to award a $116 million contract to Las Vegas Paving, $4.6 million more than the lowest bidder. They were willing to do that. And they were willing to abuse discretion. See, this is the thing that this case is different. This is a unique set of facts. You are not going to find any case in the United States, literally, that is similar to the facts of this case. You have a state court judge after the April 21st hearing that enters a writ of mandamus. The writ of mandamus says that the county abused their discretion. That's not a minor thing here. You already have a state court. And at that point, if you keep in mind, you have a staff recommendation that Fisher is the lowest responsible responsive bidder, that there are no protests. So when we go back to the hearing in June 26th, what would we expect? We've already been to court once. We've been found that there are no reasons not to award this bid. That staff has found we're the lowest responsible responsive bidder. The attorney for the county has said there are no impediments. Well, what happens? Does staff make a presentation at the June 26th hearing? No. They don't ask staff. Well, you know why. Because we put on the evidence because the county commissioner said, we don't want to hear from you. That deposition is in the record. This is severe. You know, no bidder would enter into this process if they knew this was going to happen to them. And it makes a mockery of public bidding when that sort of thing happens. And when a county commissioner says in the deposition, I didn't want them to have that information. I was going to surprise them. Now, the thing is, we've already had the hearing. They want another hearing. We had a hearing on August 24th and 25th, and we were prepared to prove that the county commission had abused their discretion for a second time for untoward reasons. The only difficulty with the court hearing is that the court found a property interest. And I think the case law is replete with the holding that until the bid is actually awarded, there is no property interest. And that's the difficulty I have with the district court ruling, is I think it incorporated a property interest that didn't exist. Your Honor, and I can understand that, and I wasn't very happy with that decision either. Except, keep in mind, this is a case that was originally filed in State court. And we filed it for a writ of mandamus. We attached the 1983 violation. It was removed by the other side, not by us. We immediately amended the complaint to allege liberty interest and equal protection violations as well as the property and substantive due process issues that had been originally alleged. Therefore, we were properly in Federal court. The allegations were properly in Federal court. We also had, therefore, the supplemental or pentant causes of action that would have come from the State court, from the State allegations for a writ of mandamus and the violations of the State provisions. Therefore, this case was properly in Federal court under 1360, I think it was at 63, for pentant jurisdiction. So the jurisdiction is not an issue. And the question is if you don't have a property interest, then you don't have a remedy under 1983. And I gather what you're saying is it doesn't make any difference because you've got your State law remedies. That's exactly right, Your Honor. And I don't think the Court decided that. In fact, the writ that was issued, and I don't have, you know, you run down time and you start getting a little nervous, so I do want to cover a couple of issues. Are you nervous? Yes. Okay. Moving on. I want to take a look at the writ that was entered on September 17, 2009, because as has already been noted, the horse is out of the barn. There is now a court order, and it is based upon a hearing, and it is based upon a record. The hearing has already occurred here. I think the question really is appropriateness of the remedy. I mean, one of the questions. I mean, it's a pretty large leap to find a violation of a court order and then order a massive public works project. Your Honor. Designate a bidder. That's a pretty large degree of Federal intervention in a State local matter. Your Honor, if it was any other case, if it was any other situation, I'd agree with you. In other words, if it was just taken in isolation from the January 6, 2010 hearing, then I would say I would be very concerned. We probably wouldn't even be here. I mean, we would have just given up, because we understand what the burden is and what the standard is. But at a certain point, the courts have to intervene, because if you don't, there is no justice, there is no public bidding. At a certain point, there is no integrity in the system, and the statutes are designed to prevent against favoritism. That is one of the very purposes. So when you start going after you've been ordered twice now, you've abused your discretion twice, you've acted arbitrary and capricious twice, you go through a third time. Now the court says, go have a proper hearing. And you have no hearing at all. The order, and I did want to point out that I got myself this one, the order itself says on page, excerpt for the record, volume 268, that adequate notice of all specific information that will be considered by the Board of County Commissioners at the time of rehearing, get this, to select the lowest responsive responsible bidder for bid number 601309-08. Going to the next page, excerpt for the record, 69, there shall be a fair and impartial hearing on all matters and information to the question of which bidder is the lowest responsive responsible bidder on lines 2 and 3 of that page in determining the lowest responsive responsible bidder. This order was crafted in a specific way. This order was not designed to allow them to circumvent in a crude manner the court order and what had taken now nine months to try to get a fair hearing. It was not contemplated that they would just show up and reject all bids. Therefore, the cases of the... And the financial condition of the county dictated a different approach. Doesn't that really go to exactly why there's an act of bad faith here? Because the writ of mandamus was entered on September 17th, 2009, and then on October 20th and November 3rd, 2009, they happened to have hearings on these questions. They happen now to decide whether or not the circumstances have changed. Well, mindful, too, that we weren't even invited to those hearings. We didn't even know they occurred until after they had happened. They're not even part of the record. They don't even sustain the decision. So why isn't the appropriate remedy to say, okay, go back and have your hearing? We've already had the hearing, Your Honor. See, that's the problem here. But you had the wrong decision-maker. That's the problem. You had the hearing before the wrong entity. Instead of having the hearing before the court, it should have been before the county commission. That's the difficulty I'm having conceptually. What hearing are we going to have before the county commission now? Well the hearing was ordered by the court. And you'd have to take your chances and take your chance on appeal. I mean, I'm not saying, I'm not suggesting we reach any decision now. I'm just asking a question about the appropriateness. I understand, Your Honor. I recognize the difficulty. I have perceived that this was going to be the main issue, whether or not the Federal District Court should be able to intervene. I suggest to you that the facts of this case are so unique that the hearing on August 24th and 25th did occur. There was already a hearing. It's not like we come to a clean slate in January of 2010. This is not a clean slate. This is a case in which it has already been proven in a hearing that they abused their discretion, that they were arbitrary and capricious. Judge Gonzales, back in after the April 21st hearing, could have appropriately awarded this contract on the record to Fisher, Sand & Gravel because, based upon the record at that time, we were the lowest responsible responsive bidder and there were no protests. She exercised restraint. I wish she wouldn't have. But we're here today. So we go back there and we're going to get a fair hearing. We absolutely don't. Not only do we not get a fair hearing, we get ambushed and abused. You're going to send us back? You can imagine how my client feels about going back to that forum. No, I haven't decided anything at all. Well, I'm not saying you've pre-decided it, Your Honor, but I give you the reality of what happens in this case. This is a unique case. We don't get facts like this. You don't get to see the inner workings all the time. But if you go back, now you go back with the county commission knowing that a State court has criticized what happened, that a Federal district court has criticized what happened, and that at least one judge on the court of appeals has criticized what happened. So it may be a different playing field. You want me to predict? You know, Your Honor, and I say that. I've stuck to the facts. I've done that intentionally because I recognize this is not a case where we try to go and decide people's motives. But this is a case where we do have a record of their motives. We do have a record of their motives in the August 24th and 25th. I put that in the record. They did not necessarily want to go forward with the rest of the hearing, but I insisted because I anticipated that someday I was going to have to answer the question of why a court should intervene in this matter. So the record is already there, August 24th and 25th. Judge Jones gave them a chance. He gave them a chance to make up for their amends. He gave them a chance to do it the right way. But they have to go back before Judge Jones after the hearing. So you don't think that's a deterrent for the county? They have to go back before Judge Jones after this hearing? I suspect what will happen is that the county, well, I can predict what will happen. It's a tough situation. I understand, Your Honor. But I do submit then, based upon the record, that Judge Jones's ‑‑ your decision should be that he abuses discretion. Really, you know, if you put yourselves in the arbitrary position that I'm now going to decide whether a district court judge who hears all the evidence and is there in front of everything shouldn't be able to enforce his orders, what have you done to the bidding statutes in Nevada? No, we're not saying he can't enforce his order. We're talking about the way the order is enforced. And then we have to say that the frutility doctrine, the doctrine that it's clear in administrative procedures that even though you know what's going to happen to you, you just have to go back and let it happen to you. That's what we submit in this case is clear on the record, that there's really no issue as to what has happened to us and what will happen to us, and that Judge Jones saw that clearly from the record. So why don't you have a damage remedy? If you play all this out and you think it's going to turn out badly for you, you're not going to get the contract that's going to be sustained. You've got a damage remedy theoretically, right? So I mean, I realize that no one wants to come back, but it is – I mean, I'm just expressing my reluctance to courts ordering a multimillion-dollar public works contract. I mean, that's a – it is a fairly – well, it's a significant action taken by the district court, and I know Judge Jones didn't take the action lightly. Correct. I know that, but those are the topics you want to address. I believe it's in your wise hands, Your Honors. I recognize that you sit in that position and I'm in my position. I advocate for the best of my client, and I hope for the best for my client. Thank you very much. I appreciate that. Give you two minutes. Thank you, Your Honor. The – I think the conclusion is inescapable if you read the order. The hook by which Judge Jones wrapped his decision-making was a finding of due process, that fundamentally the foundation for his order of due process is incorrect ruling of law. When it came back to him, Your Honors, he looked at the papers and believed that which the movement cited as a reason for rejection was pretextual. It was like an employment discrimination case on summary judgment where the court rejects the employer's version of events and grants summary judgment for the plaintiff. There was a due process problem with the case, but it wasn't a right protected for the plaintiff. It was the right for the county to be heard. The person, the county commission – There's no due process rights to have an evidentiary hearing in district court. The court has the discretion to decide matters on the papers. There's no due process right to have an evidentiary hearing. Your Honor, I respectfully disagree. When the evidence is in conflict, the court cannot reject conflicting evidence or reject the ability for their side to present evidence and make findings of fact that are adverse. In this case – When there's conflict in evidence, that's when the district court does its job. Besides which version of the evidence it credits more. Your Honor, I would agree with you entirely had the decision been made after an entire hearing where the county and the defendant had an opportunity to put on witnesses, cross-examine and so forth. In this case, the – Do you have a case citation, a case authority that says in Federal court that a court has the obligation to have an evidentiary hearing when there's conflicting evidence? I do, Your Honor. There's two cases cited in my brief. I don't have the page or can remember the cases now, but they're cited in the opening brief. Well, let's say that we agree with you that there's no property interest here involved and perhaps no due process right that's protected under 1983. Judge Jones could still exercise supplemental jurisdiction on State law claims, right? I agree. That's not what he did in the order, but he could. I understand, yeah. He could, but really his finding, he didn't apply the correct standard. I mean, the standard for mandamus is presumption that what the government did wasn't in the best interest, a rebuttable presumption, but he threw out the presumption on the papers and never gave the government an opportunity to demonstrate what had happened. The person that made the movement to reject all bids was the same county commissioner who voted twice for Fisher to get the contract or to give them a continuance. He was in their camp up until the last bid where he thought it's going to be more litigation, this is our last project that we have money for, I think it's in the best interest that we have it redrawn and put up for rebid. May I ask a real-world question if I make sure I understand this? This project, as I understand, is going to be combined? I mean, if the county votes for combined with another project, or what's the county intending to do at this point? What was left in the motion that was granted was to reject all bids in the public interest, have the director of public works look at bringing in, putting in an additional interchange at North 5th Street, and once putting that together, putting it re-up, putting it out for rebid again, because that would ostensibly be all the money the county has left to go forward on Beltway projects. So it would be more, the project would be larger. Be larger. At least that was the motion that the county commissioner made for the director of public works to examine. Thank you, Your Honor. Thank you. Patient's heard will be submitted for decision. I assume, you know, you've been at this a long time. I assume that the assistance of the circuit mediator would not be of aid to you, do you think? You know, I would reject that out of hand. This has been very expensive and time-consuming. I will say that we have talked about mediators, but my understanding is that various forms are associated with the form of mediator, and there's that accomplished mediator. That was our position as well before. Great. Thank you. We have great mediators, so we may be able to do something. Patient's heard will be submitted for decision.
judges: Carney, Thomas, Rawlinson